# WELDON JONES, JR. ET AL. *v.* STATE OF MARYLAND

[No. 23, October Term, 1945.]

482

*Decided January 8, 1946.*

The cause was argued before DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*W. A. C. Hughes, Jr.,* for the appellants.

*Harry C. Dashiell, Acting State's Attorney for Somerset County,* and *J. Edgar Harvey, Assistant Attorney General,* with whom were *William Curran, Attorney General,* and *Rex A. Taylor, State's Attorney for Wicomico County,* on the brief, for the appellee.

GRASON, J., delivered the opinion of the Court.

Weldon Jones, Jr., a colored boy eighteen years of age, and his brother Holbrook Jones, fourteen years of age, were convicted by the judges of the Circuit Court for Wi-

comico County, without the aid of a jury, of murder in the first degree. Weldon was sentenced to be hanged, Holbrook to the Penitentiary of the State of Maryland for the term of his natural life. They appealed to this Court.

The indictment against them, upon which they were tried and convicted, was returned by the grand jury of Somerset County. It charges that these brothers "on the 12th day of January, 1945, at the County and State aforesaid, feloniously, wilfully and of deliberately premeditated malice, aforethought, did kill and murder, I. Raynor Graham." The accused filed in the Somerset court a suggestion, supported by their affidavit, that they could not obtain a fair and impartial trial in that court, or any court of the circuit, and prayed that an order be passed for the removal of the record in the case to a court of some other circuit for trial. Their counsel wrote a letter to the presiding judge of the court, in which he objected to the trial of the case "in Dorchester County for the reasons set out in my motions for change of venue filed in Indictments two and five." These motions are not contained in this record. The Circuit Courts for Somerset, Dorchester and Wicomico Counties are in the First Judicial Circuit of Maryland. The court, however, disregarded request of the accused to send the case to a court in another circuit, and sent the same to the Circuit Court for Dorchester County for trial. Thereafter the State's Attorney for Somerset County filed a suggestion, supported by his affidavit as State's Attorney that the State could not have a fair and impartial trial in that court, and prayed that the record be sent to some other court in the circuit for trial. On March 6, 1945, the accused filed a paper in the Circuit Court for Dorchester County, captioned "Petition for Change of Venue." It was sworn to by the accused and, among other things, contains the following allegations of facts: That they cannot have a fair and impartial trial in this court (Circuit Court for Dorchester County) or any other court in this circuit; that the crimes for which the de-

fendants have been indicted have created a great deal of unrest and racial friction throughout the circuit, and more particularly in Somerset County; that mobs of armed men formed to track down and capture the defendants, and said mobs threatened bodily harm to them; that the situation became so acute it was necessary for the head of the Maryland State Police to rush sixty State troopers to the scene in an effort to quiet violence and to safeguard the lives of these defendants; that said troopers were forced to transport the defendants, under cover of night, out of the community to the western shore of the State, where these defendants were housed for safekeeping in the Harford County jail; that resentment against Negroes has been so great that other Negro citizens and residents of this county and circuit were advised and did remain in their homes to prevent racial riots; that the parents, brothers and sisters of the accused were forced to leave their homes to prevent molestation and possible mob reaction; that a mob did break into and ransack the home in which the accused lived at the time of the commission of these crimes; that on February 14th, 1945, the above suggestions for removal were acted upon by the court and the causes removed from Somerset County to Dorchester County; that the cases against the accused were moved by the State to Wicomico County; that Wicomico County is much closer to the community where the crimes occurred than is Dorchester, and is subject to more local prejudice against the defendants, due to statements printed in local and state-wide newspapers alleging confessions and admissions of guilt had been secured from the defendants; that accused believe it is impossible for a jury to be selected in any county in the circuit which would render a fair, impartial and unprejudiced vedrict; that the accused were constrained to forego their right to trial by jury, which will result in a denial to them of due process of law; that they were compelled to relinquish their right to a jury trial and forced to accept the alterna-.

tive of a trial by the court, without the aid of a jury. They prayed that the record be removed to a court of some other circuit, other than the First Judicial Circuit, and they except to the removal of this cause to Wicomico County for trial.

This petition was not replied to by the State either by way of demurrer or traverse, and on March 8th, two days after the filing of the petition, the record was transmitted to the Circuit Court for Wicomico County for trial. This appears from the docket entries in the case, while pending in the Circuit Court for Dorchester County, and is reviewable by this Court. The case was tried in the Circuit Court for Wicomico County on the 21st day of March, 1945. On that day the traversers filed a motion for change of venue, an exact copy of the petition for change of venue filed by traversers in the Circuit Court for Dorchester County on March 6, 1945. The court overruled the motion. It is noted here that the State made no reply to the motion then filed either by demurrer or traverse.

The petition of the accused for a change of venue, filed in the Circuit Court for Dorchester County, was a pleading. The State could not ignore it, because in the absence of a demurrer thereto or a traverse of the allegations of fact by the State, the facts averred must be taken as true. It was not competent for the court to ignore or summarily dismiss the petition, for no matter of law or fact was before it until the State either demurred thereto or traversed the facts alleged. If the State had denied the facts alleged in the petition, the accused would have been put to proof of the facts therein alleged. The testimony adduced would have constituted the material upon which the discretion of the court would operate. Upon review, this Court could determine if the discretion exercised was arbitrary and hence abused. We are not unmindful of the provision of Article 4, Section 8 of the Constitution of this State, which gives a right of a removal to both the State and the accused.

But this right contemplates a removal to a court where the jury is unprejudiced and will render a fair and impartial verdict based on the law and the evidence. A trial before such a jury is one of the most cherished rights of the citizen. A denial of this right would destroy due process of law. A citizen should not be coerced to relinquish his right to a jury trial and submit to a trial before the court, in order to escape an intolerable situation of a trial before a prejudiced jury. When, therefore, a suggestion that a party cannot have a fair and impartial trial, supported by affidavit, is filed in a court where a case is pending, it is the duty of the court to order a removal of the record to some jurisdiction where the jury will not be prejudiced. If it appears doubtful that the juries in a given circuit would be fair and impartial, the case should be removed to some other circuit or some other section of the State. Without rehearing the allegations contained in the petition of the accused for a change of venue, it is sufficient to say it contains averments which, not being contradicted by the State, must be taken as true, and cast a grave doubt upon the question of whether the accused could have obtained a fair trial before a jury in Wicomico County. It is unnecessary for us to review the law governing the matter. It has been so recently and so well done by the late Chief Judge Bond in the case of *Lee v. State*, 161 Md. 430, 157 A. 723, 727. In the opinion in that case all the previous pronouncements of this Court were reviewed. It is the law of this State, and decisions of other courts need not be cited. Referring to the matter before the Court in the Lee case, Chief Judge Bond said:

"It was not the problem of keeping order in the town and in the courtroom, or of preventing bodily injury to the accused or his counsel, but the further problem of obtaining a fair impartial jury to decide the case in such an orderly trial. It was not a problem, again, of having it adjudicated as a fact, with certainty, that a trial in one jurisdiction or another would not be fair and im-

partial, but a problem of the appearance of danger of having a material amount of unfairness and prejudice drawn into the jury box with persons taken from that neighborhood.

We think, from the undenied allegations of fact in the petition of the accused for a change of venue, there was the appearance of the kind of danger of which Chief Judge Bond warned in his opinion in the Lee case, and that the Circuit Court for Dorchester County abused its discretion when it sent the case to the Circuit Court for Wicomico County for trial. This action constituted reversible error. The trial court overruled a motion of the accused for a change of venue. It was an exact copy of the petition of the accused for a change of venue filed in the Circuit Court for Dorchester County on March 6, 1945. The State did not reply to this motion, and the trial court overruled the same. The error inherent in the action of the removing court permeated the record in the trial court. No man ought to be tried in a court where there is the appearance of danger that a jury impanelled in that court to hear his case will be prejudiced against him. And his right to a jury trial is not waived if under such circumstances, he is forced to accept a trial by the court in order to escape a trial before a prejudiced jury.

The court overruled a motion for severance on behalf of Holbrook Jones. No reason was stated to the court why the severance should have been granted. Counsel making the motion also represented Weldon Jones, Jr. There was no intimation that the defense of the respective defendants was hostile. That such was not the case would be assumed, as each defendant was represented by counsel making the motion. The matter was in the discretion of the court. (*Gray v. State,* 173 Md. 690, 195 A. 591.) There was no abuse of discretion, and the action of the court was correct.

The traversers moved "that all witnesses be excluded from the courtroom," which the court overruled, to which

action traversers excepted. Professor Wigmore points out the following:

"A few Courts concede that sequestration is demandable as of right. But the remainder * * * hold it is grantable only in the trial Court's discretion; declaring usually, however, that in practice it is never denied, at any rate for an accused in a criminal case."

"But when all allowances are made, it remains true that the expedient of sequestration is (next to cross-examination) one of the greatest engines that the skill of man has ever invented for the detection of liars in a court of justice. Its supreme excellence consists in its simplicity and (so to speak) its automatism; for, while cross-examination, to be successful, often needs the rarest skill, and is always full of risk to its very employers, sequestration does its service with but little aid from the examiner, and can never, even when unsuccessful, do serious harm to those who have invoked it."

"It seems properly to be demandable as of right, precisely as is cross-examination. In the first place, it is simple and feasible. In the next place, it is so powerful and practical a weapon of defense that no contingency can justify its denial as being a mere formality or an empty sentimentality. In the third place, in the case when it is most useful (namely, a combination to perjure), it is almost the only hope of an innocent opponent."

"The most that ought to be conceded to the judge is to refuse an order of sequestration where it does not appear to be asked in good faith, i. e. not in the honest hope of exposing false testimony, but merely to obstruct the trial or to embarrass the opponent's management of his case."

*Wigmore on Evidence*, 3rd Ed., Vol. 6, pages 359, 354, 357, and 358.

We think that the practice in this matter should be uniform throughout the State. At argument, counsel for the State told the court that a motion to exclude witnesses is never allowed in the First Judicial Circuit of Mary-

land. To the knowledge of the Court, in other trial courts throughout the State it is never denied in a serious criminal case. Certainly there is no reason to deny such a motion in a case like the one at bar. The granting of such a motion might well be the last means of establishing one's innocence, and the State could not be injured in any way by the granting of the same in establishing guilt.

We are cited the case of *Parker v. State,* 67 Md. 329, 10 A. 219. This was a rape case, and the court granted a motion of the defense to exclude witnesses. One of the witnesses violated the court's order and remained in the courtroom at the trial. The court did not allow the defense to offer this witness. This Court reversed that ruling and granted a new trial. The opinion in that case stated that a motion to exclude witnesses is in the discretion of the court. We do not construe that decision to mean that such discretion cannot be reviewed if exercised in a harsh, unjust, capricious and arbitrary way. We hold that the exercise of discretion in such a matter is reviewable by this Court. We agree with Professor Wigmore that "the most that ought to be conceded to the judge is to refuse an order of sequestration where it does not appear to be asked in good faith." In capital and other serious criminal cases it should be granted, and in any case its refusal is open to review in this Court. We think the refusal of the court to grant the traversers' motion to exclude the witnesses from the courtroom during the trial was an abuse of discretion and reversible error.

The remaining questions raised on appellants' brief, namely, four, five and six, can be considered together. Confessions of the traversers were offered in evidence: One, a written confession by Weldon Jones, Jr., two, a written confession by Holbrook Jones, and three, a verbal confession by Holbrook Jones. These traversers were indicted for other crimes in Somerset County. On January 13, 1945, when the written confession was obtained

from Weldon Jones, Sergeant Randall told him his name had been mentioned in connection with the assault on two women and the shooting of Raynor Graham. At the instance of counsel for traversers, all reference regarding other crimes than the crime for which they were being tried was deleted by the court. No question was raised that the confessions were not free and voluntary and had been induced by fear or hope exercised or held out to the accused by the officers. The record shows that the confessions were properly admitted by the court. Counsel for traversers contends that reference was made to other crimes, but the record shows, on his objections, all references to the other crimes were stricken out of the confessions, and hence his objection on this ground is without merit.

The further objection was made that as the confession of Weldon was made out of the presence of Holbrook, and Holbrook's confessions were made out of the presence of Weldon, all reference to Holbrook, made by Weldon, and all reference to Weldon, made by Holbrook, in their respective confessions, should be eliminated. We do not think that these objections were well founded. These traversers were being tried jointly. Counsel for the traversers did not ask the court to limit any of these confessions to the defendant making it. What Weldon confessed was admissible against him, and what Holbrook confessed was admissible against that defendant, and the confessions would have been limited in evidence against the defendant making the same, upon seasonable motion. No such motion was made, and the court was correct in overruling counsel's motion to strike out all references in the confession of one defendant to the other defendant. In *Markley v. State,* 173 Md. 309, 318, 196 A. 95, 99, it is said:

"But when on trial the confessions are admissible against the confessing codefendants, those not confessing are entitled only to have the jury directed to exclude them as proof against themselves. It may be that the

practical value of such a restriction is small, but it is the only remedy practicable on a joint trial."

Officer Sherwell obtained the verbal confession made by Holbrook. While he talked to Holbrook he made notes, we understand, of proper names that were used by the traverser in the confession. He was permitted to make reference to these notes when he testified, to which the defense excepted. There was no virtue in this exception.

For the reasons above given, the judgment and sentence respectively imposed against each of these defendants must be reversed. The case will be remanded to the Circuit Court for Wicomico County and that court is directed to return the record to the Circuit Court for Dorchester County; in the last mentioned court the State is directed to traverse the facts alleged in the traversers' "Petition for Change of Venue" filed in that court on March 6, 1945, and testimony shall be taken by the court to determine the truth or falsity of the facts alleged in petitioners' said "Petition for Change of Venue." The court will then determine to what jurisdiction it will send the case for trial.

> *Judgment and sentence against each defendant reversed, and a new trial as to each defendant awarded; case remanded to the Circuit Court for Wicomico County, with direction to proceed in accordance with this opinion.*